# EXHIBIT A

00005

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 17 2012 4:25 PM

KEVIN STOCK
COUNTY CLERK
**NO: 12-2-10932-5**

# SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

## CASE COVER SHEET / CIVIL CASES

Case Title  SCOTT TOWNSEND VS. QUALITY LOAN
SERVICE CORP. OF WASHINGTON        Case Number  12-2-10932-5

Atty/Litigant  Margaret Therese Esola        Bar #  16279    Phone  (253) 851-3030

Address  3226 Rosedale St NW Ste 100

City  GIG HARBOR        State  WA        Zip  98335

Please check one category that best describes this case for indexing purposes.
*If you cannot determine the appropriate category, please describe the cause of action below. This will create a Miscellaneous cause which is not subject to PCLR 3.*

**APPEAL / REVIEW**
____ Administrative Law Review (ALR 2) *REV 6*
____ Civil, Non-Traffic (LCA 2) *REV 6*
____ Civil, Traffic (LCI 2) *REV 6*
____ Land Use Petition (LUP 2) LUPA

**CONTRACT / COMMERCIAL**
____ ♦Breach of Contract, Commercial Non-Contract or Commercial-Contract (COM 2) *STANDARD*
____ Third Party Collection (COL 2) *REV 4*

**JUDGMENT**
____ ♦Judgmnt, Another County or Abstract Only (ABJ 2) *Non PCLR*
____ Transcript of Judgment (TRJ 2) *Non PCLR*
____ ♦Foreign Judgment Civil or Judgement, Another State (FJU 2) *Non PCLR*

**TORT / MOTOR VEHICLE**
____ ♦Death, Non-Death Injuries or Property Damage Only (TMV 2) *STANDARD*

**TORT / NON MOTOR VEHICLE**
____ Other Malpractice (MAL 2) *COMPLEX*
____ Personal Injury (PIN 2) *STANDARD*
____ Property Damage (PRP 2) *STANDARD*
____ Wrongful Death (WDE 2) *STANDARD*
____ ♦Other Tort, Products Liability or Asbestos (TTO 2) *COMPLEX*

**PROPERTY RIGHTS**
____ Condemnation (CON 2) *STANDARD*
____ Foreclosure (FOR 2) *REV 4*
____ Property Fairness (PFA 2) *STANDARD*
✓ Quiet Title (QTI 2) *STANDARD*
____ Unlawful Detainer / Eviction (UND 2) *REV 4*
____ Unlawful Detainer / Contested (UND 2) *REV 4*

**OTHER COMPLAINT OR PETITION**
____ ♦Compel/Confirm Bind Arbitration, Deposit of Surplus Funds, Interpleader, Subpoenas, Victims' Employment Leave, or Wireless Number Disclosure (MSC 2) *REV 4*
____ Injunction (INJ 2) *REV 4*
____ Malicious Harassment (MHA 2) *Non PCLR*
____ Meretricious Relationship (MER 2) *REV 4*
____ Minor Settlement/No Guardianship(MST2) *REV 4*
____ Pet for Civil Commit/Sex Predator (PCC2) *REV 4*
____ Property Damage Gangs (PRG 2) *REV 4*
____ Seizure of Property/Comm. of Crime(SPC2) *REV 4*
____ Seizure of Proprty Reslt from Crime(SPR2) *REV 4*

**TORT / MEDICAL MALPRACTICE**
____ ♦Hospital, Medical Doctor, or Other Health Care Professional (MED2)*COMPLEX*

**WRIT**
____ Habeas Corpus (WHC 2) *REV 4*
____ Mandamus (WRM 2) *REV 4*
____ Review (WRV 2) *REV 4*
____ Miscellaneous Writ (WMW 2) *REV 4*

**MISCELLANEOUS** _____

Revised 09/01/2011 Web

00006

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 17 2012 4:25 PM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR PIERCE COUNTY**

SCOTT TOWNSEND

  Plaintiff(s)

Vs.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON

  Defendant(s)

No.  12-2-10932-5

ORDER SETTING CASE SCHEDULE

Type of case:                QTI
Estimated Trial (days):
Track Assignment:       Standard
Assignment Department: 09
Docket Code:               **ORSCS**

| | |
|---|---|
| Confirmation of Service | 8/14/2012 |
| Confirmation of Joinder of Parties, Claims and Defenses | 11/13/2012 |
| Jury Demand | 11/20/2012 |
| Status Conference (Contact Court for Specific Date) | Week of 12/11/2012 |
| Plaintiff's/Petitioner's Disclosure of Primary Witnesses | 1/8/2013 |
| Defendant's/Respondent's Disclosure of Primary Witnesses | 2/5/2013 |
| Disclosure of Rebuttal Witnesses | 3/26/2013 |
| Deadline for Filing Motion to Adjust Trial Date | 4/23/2013 |
| Discovery Cutoff | 5/28/2013 |
| Exchange of Witness and Exhibit Lists and Documentary Exhibits | 6/11/2013 |
| Deadline to file Certificate or Declaration re: Alternative Dispute Resolution (PCLR 16 (c)(3)) | 6/18/2013 |
| Deadline for Hearing Dispositive Pretrial Motions | 6/18/2013 |
| Joint Statement of Evidence | 6/18/2013 |
| Pretrial Conference (Contact Court for Specific Date) | Week of 7/2/2013 |
| Trial | 7/16/2013 9:00 |

## <u>Unless otherwise instructed, ALL Attorneys/Parties shall report to the trial court at 9:00 AM on the date of trial.</u>

### NOTICE TO PLAINTIFF/PETITIONER

If the case has been filed, the plaintiff shall serve a copy of the Case Schedule on the defendant(s) with the summons and complaint/ petition: Provided that in those cases where service is by publication the plaintiff shall serve the Case Schedule within five (5) court days of service of the defendant's first response/appearance. If the case has not been filed, but an initial pleading is served, the Case Schedule shall be served within five (5) court days of filing. See PCLR 3.

### NOTICE TO ALL PARTIES

All attorneys and parties shall make themselves familiar with the Pierce County Local Rules, particularly those relating to case scheduling. Compliance with the scheduling rules is mandatory and failure to comply shall result in sanctions appropriate to the violation. If a statement of arbitrability is filed, PCLR 3 does not apply while the case is in arbitration.

Dated: July 17, 2012

Judge EDMUND MURPHY
Department 09

00007

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 17 2012 4:25 PM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

1

2

3

4

5

6

7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

8

9   SCOTT TOWNSEND & DEBORAH
    TOWNSEND, husband and wife,
            Plaintiffs,

10

            vs.                                     CASE NO:

11

12  QUALITY LOAN SERVICE CORP. OF
    WASHINGTON; THE ENTITY KNOWN AS
    "THE BANK OF NEW YORK MELLON,

13  F/K/A THE BANK OF NEW YORK, AS
    TRUSTEE FOR THE HOLDERS OF THE

14  CERTIFICATES, FIRST HORIZON            SUMMONS
    MORTGAGE PASS-THROUGH

15  CERTIFICATES SERIES FHAMS 2006-AA6,
    BY FIRST HORIZON HOME LOANS, A

16  DIVISION OF FIRST TENNESSEE BANK
    NATIONAL ASSOCIATION, MASTER

17  SERVICER, IN ITS CAPACITY AS AGENT
    FOR THE TRUSTEE UNDER THE POOLING

18  AND SERVICING AGREEMENT";  FIRST
    HORIZON HOME LOAN CORPORATION,

19  FIRST HORIZON HOME LOANS, A
    DIVISION OF FIRST TENNESSE BANK,

20  N.A.; MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.;

21  NATIONSTAR MORTGAGE LLC.

22          Defendants.

23

24

3501RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*Summons* – 1

00008

**TO THE ABOVE-NAMED DEFENDANTS:**

QUALITY LOAN SERVICE CORP. OF WASHINGTON;

THE ENTITY KNOWN AS "THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FHAMS 2006-AA6, BY FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT";

FIRST HORIZON HOME LOAN CORPORATION,

FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESE BANK, N.A.;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;

NATIONSTAR MORTGAGE LLC.

A lawsuit has been started against you in the above-entitled Court by the Plaintiffs, SCOTT TOWNSEND & DEBORAH TOWNSEND. Plaintiffs' claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serving a copy upon the person signing this Summons within twenty (20) days after the service of this Summons, excluding the day of service, or within sixty (60) days if served outside of the State of Washington. A default judgment may be entered against you without further notice. A default judgment is one where the Plaintiffs are entitled to what they ask for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 16th day of July, 2012.

/s/ Ha Thu Dao
_____
HA THU DAO, WSBA #21793
Attorney for Plaintiffs

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*Summons – 2*

00009

1

2

| File the original of your response with the clerk of the court at: | Serve a copy of your response on Plaintiff's Attorney: |
|---|---|
| CLERK OF THE COURT<br>PIERCE COUNTY SUPERIOR COURT<br>930 Tacoma Ave S, Room 110<br>Tacoma, Washington 98402 | HA THU DAO, ESQ.<br>3501 Rucker Avenue<br>Everett, Washington 98201 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3501RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*Summons – 3*

00010

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 17 2012 4:25 PM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

1

2

3

4

5

6

7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

8

9    SCOTT TOWSEND & DEBORAH
     TOWNSEND, husband and wife,
                    Plaintiffs,

10

                        vs.                              CASE NO:

11

12   QUALITY LOAN SERVICE CORP. OF
     WASHINGTON; THE ENTITY KNOWN AS
13   "THE BANK OF NEW YORK MELLON,
     F/K/A THE BANK OF NEW YORK, AS
     TRUSTEE FOR THE HOLDERS OF THE
14   CERTIFICATES, FIRST HORIZON
     MORTGAGE PASS-THROUGH                    COMPLAINT FOR INJUNCTIVE
15   CERTIFICATES SERIES FHAMS 2006-AA6,      RELIEF, DAMAGES & RESTRAINT
     BY FIRST HORIZON HOME LOANS, A           OF TRUSTEE'S SALE
16   DIVISION OF FIRST TENNESSEE BANK
     NATIONAL ASSOCIATION, MASTER
17   SERVICER, IN ITS CAPACITY AS AGENT
     FOR THE TRUSTEE UNDER THE POOLING
18   AND SERVICING AGREEMENT";  FIRST
     HORIZON HOME LOAN CORPORATION,
19   FIRST HORIZON HOME LOANS, A
     DIVISION OF FIRST TENNESSE BANK,
20   N.A.; MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.;
21   NATIONSTAR MORTGAGE LLC.

22              Defendants.

23

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*COMPLAINT* – 1

00011

1

## I.  PARTIES, JURISDICTION AND VENUE

2   1. Plaintiff SCOTT TOWNSEND is a married man, and a resident of Pierce County,

3   Washington.

4   2. Plaintiff DEBORAH TOWNSEND is a married woman, and a resident of Pierce County,

5   Washington.

6   3. Plaintiffs are the legal owners of certain real property located at 1221 14th Avenue, Fox Island,

7   Pierce County, Washington  98333, legally described further in the attached Exhibit 6.

8   Defendant QUALITY LOAN SERVICES CORP OF WASHINGTON ("Quality") is a

9   Washington corporation. It purports to be Successor Trustee under the certain Deed of Trust

10   dated August 25, 2006, with Plaintiffs being named as borrowers/mortgagors. However, the

11   Deed of Trust identifies Chicago Title Insurance Company as the Trustee.

12   4. The subject Deed of Trust further identifies the original lender as Defendant FIRST

13   HORIZON HOME LOAN CORPORTION\ ("First Horizon"), a Kansas corporation, and

14   identifies Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

15   ("MERS"), a Delaware corporation,  as nominee and beneficiary.

16   5. By way of an Assignments of Deed of Trust recorded in the public records of Pierce County

17   executed by Defendant MERS, Defendant FIRST HORIZON HOME LOANS, a division of

18   FIRST TENNESSEE BANK, N A. (First Horizon/First Tennessee") received all beneficial

19   interest under the subject Deed of Trust. The Assignment was dated 2/13/2009, but not notarized

20   until 3/17/2009, and was not recorded until 3/30/2009.

21   6. By way of another Assignment of Deed of Trust executed on 3/8/2012 and recorded on

22   3/16/2012, by Defendant NATIONSTAR MORTGAGE LLC, a foreign corporation, as attorney-

23   in-fact for Defendant FIRST HORIZON HOME LOAN, a division of FIRST TENNESSEE

24

1 BANK, N.A. ("First Horizon/First Tennessee"), the beneficial interest and rights under the Deed

2 of Trust transferred once again to Defendant "THE BANK OF NEW YORK MELLON, f/k/a

3 THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES,

4 FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AA6, BY

5 FIRST HORIZON HOME LOANS A DIVISION OF FIRST TENNESSEE BANK NATIOANL

6 ASSOCIATION, MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE TRUSTEE

7 UNDER THE POOLING AND SERVICING AGREEMENT" ("BNYM").

8 7.  It appears that all the named Defendants have claimed interest in the property owned by the

9 Plaintiffs. All acts complained of herein occurred in Pierce County, Washington.

10 **II. BACKGROUND MATERIAL FACTS**

11 8.  Defendant Quality has issued and recorded several notices of Trustee's Sale against the

12 Plaintiffs and their home of 1221 14th Ave, Fox Island, Pierce County, Washington.  The most

13 recent Notice of Trustee's Sale recorded on April 23, 2012, states that the sale date is scheduled

14 for July 20, 2012 (Exhibit 1, 4/23/12 Notice). However, when Plaintiffs called the dedicated

15 telephone line to determine the status of the foreclosure sale, they learned that the sale date has

16 been postponed to July 27, 2012, "at the Trustee's discretion." **This Notice of Trustee's Sale**

17 **declares that "a written Notice of Default was transmitted by the Beneficiary or Trustee to**

18 **the Borrower ... by both first class and certified mail on 2/18/2009."**

19 9.  The subject Notice of Trustee's Sale refers to the certain Deed of Trust executed by

20 Plaintiffs in 2006. The Deed of Trust being referred to actually identifies the Trustee with the

21 power of sale as Chicago Title Insurance Company (Exhibit 2, DOT). There is nothing in the

22 public records to indicate that Chicago Title Insurance Company has resigned as trustee under

23 the DOT. Similarly, there is nothing to support Quality's authority to act as Successor Trustee

24

1    who possesses the power of sale as provided for in RCW 61.24.010 (2).

2    10.   **Despite the clear lack of any authority to act as trustee under the DOT, between 2009**

3    **and 2012,  Quality has issued no less than six Notices of Trustee's Sale and recorded the**

4    **same in the public records**. In addition to the Notice of April 2012, there were a Notice of

5    12/31/2009 sale date, Instrument No. 200912310306; Notice of 3/17/2010 sale date, Instrument

6    No. 201003170204;  Notice of 4/2/2010 sale date, Instrument No. 201004020015; Notice of

7    1/20/2011 sale date, Instrument No. 201101200432; and Notice of 6/2/2011 sale date,

8    Instrument No. 201106020039.  Quality has unilaterally changed the sale dates several times

9    during the last three years for reasons that are unknown to the Plaintiffs.

10   11.   In one of these Notices of Trustee's Sale, the preparer of the document has been disclosed

11   to be  MetLife Home Loans, a division of MetLife Bank, N.A.  On MetLife Home Loans's

12   webpage, the company explains that "**In September 2008, MetLife Home Loans officially**

13   **acquired First Horizon Home Loans, the residential origination and servicing division of**

14   **First Tennessee Bank National Association, a subsidiary of First Horizon National**

15   **Corporation. As a result of this acquisition, First Horizon Home Loans is now MetLife**

16   **Home Loans**."  https://secure.wholesale.metlifehomeloans.com/un_about.htm.

17

18

19

20

21

22

23

24

12.    Yet, on 3/30/2009, an Assignment of Deed of Trust was recorded in the public records of Pierce County to memorialize how MERS had assigned "all beneficial interest to First Horizon Home Loans, a division of First Tennessee Bank National Association." (Exhibit 3, Assignment of Deed of Trust). If MetLife had acquired First Horizon Home Loans, a division of First Tennessee Bank, NA, in 2008, MERS should have assigned the interest of the DOT to MetLife Home Loans and not to First Horizon Home Loans, a division of First Tennessee Bank, N.A., in 2009.

13.    To add on to the mystery, on March 30, 2012, three years later, another Assignment of Deed of Trust was recorded in the public records. This document memorializes First Horizon Home Loans, a division of First Tennessee Bank National Association's act of assigning to "The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certifies Series FHAMS 2006-AA6, by First Horizon Home Loans, a division of First Tennessee Bank National Association, Master Servicer, in its capacity as agent for the Trustee under the Pooling and Servicing Agreement." (Exhibit 4, Assignment of Deed of Trust recorded 3/16/2012) .

14.    According to this second Assignment of Deed of Trust as recorded in the public records, the mortgage loan, including the power of sale, was now transferred to a 2006-securitized trust. **Despite the fact that securitized trusts are registered with the SEC and their Pooling and Servicing Agreements can be readily located on the SEC's website, this particular securitized trust as identified on the Second Assignment of Deed of Trust cannot be located.**

15.    The Assignment was executed by yet another entity, Nationstar Mortgage LLC, attorney in fact for First Horizon Home Loans, a division of First Tennessee Bank National Association (Exhibit 4,  Assignment of DOT recorded 3/16/2012). There is no power of attorney produced in

1    connection with Defendant Nationstar's execution of the Second Assignment of the Deed of

2    Trust.

3    16.    The law firm of McCarthy & Holthus , LLP, had represented to the Western District of

4    Washington Bankruptcy Court in Case No. 09-47534, in 2009 that First Horizon/First Tennessee

5    is "Owner and Holder of the Original Promissory Note that creates the loan obligation."  The law

6    firm further asserted that First Horizon/First Tennessee is "also the beneficiary under the Deed of

7    Trust that encumbers the property" and sought relief from stay to pursue foreclosure.  The law

8    firm filed a copy of the Promissory Note in support of this assertion which has no endorsement

9    or an allonge to substantiate its claim that the Note was assigned or sold. Thus, the Note must be

10   assumed to have remained in the original lender's name, which was First Horizon Home Loan

11   Corporation. (PACER Case 09-47534, Doc. 18, filed 11/20/2009).

12                              **V.  LEGAL ARGUMENTS**

13   **A.THERE ARE SUFFICIENT GROUNDS UPON WHICH THE FORECLOSURE SALE**
                              **SHOULD BE RESTRAINED**
14
     **Ground One. Quality does not have authority to act as successor trustee**. It is undisputed
15
     that the original trustee named in the Deed of Trust is Chicago Title. It is further undisputed that
16
     there is no notice of resignation of trustee/appointment of a successor trustee filed in Pierce
17
     County where the Plaintiffs' home is located. RCW 61.24.010(2) specifies that "Only upon
18
     recording the appointment of a successor trustee in each county in which the deed of trust is
19
     recorded, the successor trustee shall be vested with all powers of an original trustee." Failing to
20
     strictly adhere to the mandate of the statute means that Quality, whose name is not on the Deed
21
     of Trust and who has not been appointed as successor trustee, is without any power to act on
22
     behalf of the Beneficiary. *GMAC Mortgage Co. v. Wynkoop*, 2007 Wash. App. LEXIS 2813
23
     (Wash. Ct. App., Oct. 8, 2007) .
24

1    **Ground Two. Pursuant to RCW 61.24.040(1)(a), the Notice of Trustee's Sale must be**

2    **recorded at least 90 days prior to the scheduled foreclosure sale**; however, the Notice of

3    Trustee's Sale in this case was not recorded until April 23, 2012, which is 88 days before the

4    scheduled sale date of July 20, 2012.  Therefore, the Notice of Trustee's sale is invalid.

5    **Ground Three. The identity of the Beneficiary under the Deed of Trust cannot be**

6    **ascertained.** Under the Deed of Trust Act, the trustee must have proof that the beneficiary is the

7    owner of any promissory note or other obligations secured by the deed of trust before issuing a

8    notice of trustee's sale. RCW 61.24, *et. seq.*. Here, Quality's half a dozen notices of trustee's sale

9    as recorded in the public records of Pierce County raise more questions than answers as to the

10   role that Quality actually plays in the foreclosure. The multiple Assignments of Deed of Trust

11   purporting to clarify actually obscures the issue of ownership of the Note and Mortgage.

12          The facts in *Grant v. First Horizon Home Loans*, 2012 Wash.App. LEXIS 1246 (Court of

13   Appeals of Washington, Division One May 29, 2012) are nearly identical to our facts. In *Grant,*

14   the trustee is Quality Loan Service, the original lender is First Horizon Home Loans, MERS as

15   nominee assigned the interest and rights under the note and mortgage to Bank of New York

16   Mellon trustee of a securitized trust who claims to be the ultimate owner/holder of the mortgage

17   loan.  Under these facts, as to MERS, the *Grant* court stated that while Bank of New York

18   alleged to have acquired whatever interest it has in the note and deed of trust by assignment from

19   MERS, nothing in the record established conclusively that MERS had any interest in the note to

20   convey: "The note makes no mention of MERS. It identifies only 'First Horizon Corporation

21   d/b/a First Horizon Home Loans' as the 'Note Holder'. There is no evidence that First Horizon

22   transferred the note to MERS or to BNYM." *Id.*   In this case, the Note is made payable to First

23   Horizon Home Loan Corporation and has no endorsement to MERS or to BNYM.

24

1    The *Grant* court emphasized that the "foreclosing entity must hold the mortgage *at the*

2    *time* of the notice and sale in order to accurately identify itself as the present holder in the notice

3    and in order to have authority to foreclose under the power of sale", citing to *U.S. Bank v.*

4    *Ibanez,* 458 Mass. 637, 941 N.E.2d 40 (2011).  Under the facts of this case, foreclosure was

5    commenced in 2009 and BNYM did not come into any ownership interest or right of the loan

6    until the Second Assignment of Deed of Trust was recorded in March of 2012. BNYM is thus

7    not the proper party to conclude the foreclosure by proceeding to trustee's sale.

8    Given the doubtful nature of both Quality's authority to act as Trustee for BNYM , and

9    BNYM's claim of ownership and right under the Deed of Trust, this Court, which has

10   jurisdiction over the Plaintiffs' property, and as a matter of equity can grant the relief that is

11   warranted, must restrain the sale until these two questions are answered satisfactorily by these

12   entities. *Hubbell v. Ward*, 40 Wn.2d 779, 787, 246 P.2d. 468 (1952).

13                              **B.VIOLATIONS OF WASHINGTON DEED OF TRUST ACT**

14   Under Washington Deed of Trust Act, the trustee holds an interest in the title to the

15   grantor's real property on behalf of the beneficiary. The term "beneficiary" is defined by statute

16   as "the holder of the instrument or document evidencing the obligations secured by the deed of

17   trust. RCW 61.24.005(2). The foregoing facts call into doubt the identity of the beneficiary under

18   the subject deed of trust at the time that foreclosure commenced in 2009.

19   The statutory provisions of the Act are to be strictly adhered to, and the defective Notices

20   of Trustee's Sale, Improper Act by Quality as a new trustee, constitute violations of the statute

21   and void the sale, if allowed to occur.

22                              **C. DECLARATORY & INJUNCTIVE RELIEF**

23   The Plaintiffs are entitled to temporary and  injunctive relief barring the Defendants from

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*COMPLAINT – 8*

00018

1  wrongfully foreclosing upon their property as none of these entities has shown that it is the real

2  party in interest to enforce either the Note or the Deed of Trust. RCW 64.21.005(2), see also,

3  Pizan v. HSBC Bank, USA, N.A., 2011 U.S. Dist. LEXIS 66861 (W.D. Wash. June 23,

4  2011)(citing to recent decisions discussing granting injunctive relief). There are no adequate

5  remedies at law for the permanent loss of Plaintiffs' home of the Court does not question the

6  quantity and quality of proof put forth by the Defendants in support of foreclosure. Plaintiffs

7  would suffer irreparable loss including loss of the homestead and eviction.

8       Plaintiffs are entitled to the answers of three separate questions; who owns their

9  Mortgage loan, who holds their Promissory Note, and most importantly, whether MERS, FIRST

10  HORIZON HOME LOANS, or BANK OF NEW YORK MELLON can be the Beneficiary under

11  the subject DOT.  The issue of ownership of the Promissory Note is of utmost important to

12  Plaintiffs because "[I]n order to discharge an obligation under a negotiable note, the maker must

13  pay the 'person entitled to enforce the instrument.'"  RCW 62A.1-201(20).  Since there are

14  multiple parties in the subject loan transaction whose roles and involvement are completely

15  obscured and the facts are actively concealed by the Defendants from the Plaintiffs, a

16  determination of which entity owns the note and which entity can claim holder status is

17  dispositive because "a person entitled to enforce an instrument means (i) the holder of the

18  instrument or (ii) a nonholder in possession of the instrument who has the rights of the holder."

19  RCW 62A.3-301.

20                    **D. CRIMINAL RACKETEERING**

21       It is clear that the Defendants are acting in concert of one another in an effort to deprive

22  Plaintiffs of their property without just cause. Defendant Quality prepared and recorded multiple

23  Notices of Trustee's Sale that are lacking in form as well as substance. The chain of assignment

24

1    in this case is so convoluted it screams out fraud and deception. Defendant MERS purportedly

2    assigned interest under the Note that it never had and executed an assignment of deed of trust in

3    favor of an entity that it knew or should have known is not the correct legal entity. Defendant

4    First Horizon Home Loan, a division of First Tennessee Bank, which had already been acquired

5    by MetLife Home Loans Corporation, carried on to assign right and interest under a Note that

6    had never been endorsed or delivered to it. Without any document to evidence the representative

7    power, Defendant Nationstar nonetheless injected itself into the transaction and executed an

8    assignment of deed of trust in favor of Defendant Bank of New York, as trustee for the

9    securitized trust that cannot be located on the SEC's records. Each and every one of these

10    Defendants have participated in a conspiracy to defraud not only the Plaintiffs but the public, and

11    now the Court in order to reap financial profits from the taking and sale of Plaintiffs' property.

12          Each defendant herein constitutes an "enterprise" as that term is defined by

13    RCW9A.82.010(8). The collective act of attempting to foreclose upon the Plaintiffs' home and

14    demanding payments repeatedly based on doubtful or non-existent proof of ownership similarly

15    constitute a pattern of criminal profiteering activity as defined by RCW 9A.82.010, et. seq.

16    Based on information and belief, Plaintiffs allege that defendants have engaged in more than

17    three predicate acts within the last three years toward other individuals who are similarly situated

18    to Plaintiffs and said conduct has resulted in actual injury to the public.

19          Where Plaintiffs have demonstrated that they are likely to prevail on their claim of

20    Criminal Profiteering against the Defendants, the Court should allow the restraint of the

21    Trustee's Sale without requiring the posting of a bond. *Bowcutt v. Delta North Star Corp.*, 95

22    Wn. App. 311, 976 P.2d 643 (1999); *see also, Pizan v. HSBC Bank USA, N.A.,* 2011 U.S. Dist.

23    LEXIS 66861 (U.S.Dist. W.D. Wash., June 23, 2011).

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*COMPLAINT* – 10

1

### E. VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

2      The Defendants, by conduct described herein, have committed unfair and deceptive

3  practices as defined by the Washington CPA. Defendants have wrongfully held themselves out

4  as trustee and  beneficiaries  under WADOTA, or the holder of the indebtedness that is the

5  subject of this action when, in fact, they have no such legal st1atus.

6       Plaintiffs must prove the following elements to recover under the WACPA: (1) an unfair

7  or deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) the act or

8  practice impacts the public interest; (4) the act or practice caused injury to the plaintiff in his

9  business; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge*

10 *Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 787, 780, 719 P.2d 531 (1986).

11      By pretending that various entities have owned and held the note and deed of trust and

12 creating a chain of assignment while the loan had in fact been securitized many years prior, all

13 the named Defendants have been engaging in systemic fraud against the public. The same pattern

14 of practice has been repeated many times over in Washington as well as in other states.

15      Plaintiffs have suffered financial as well as non-financial damages as a result of

16 Defendants' individual and collective acts in an amount to be proven at trial.

17                              **CONCLUSION**

18      Based on the foregoing facts and arguments, the Plaintiffs respectfully request and pray

19 for the following:

20       o   Restraint the Trustee's Sale as being attempted by Defendant Quality Loan

21           Service, Corp.

22       o   Judgment quieting title to Plaintiffs as to all right title and interest in the subject

23           property free and clear of any interest of all Defendants.

24

1

    o   Judgment that the Deed of Trust identified above is void and of no legal effect.

2

    o   Judgment against   all Defendants in an amount equal to Plaintiffs' damages,

3

        including attorney's fees and costs in such amount as is ordered by the Court for

4

        the necessity of bringing this action.

5

    o   And such other relief as the Court deems just and equitable under the

6

        circumstances.

7

DATED this 16th day of July, 2012.

8

9

Respectfully Submitted By:

10

11

_____

HA THU DAO, WBN 21793
Counsel for the Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 18 2012 8:30 AM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 1

# NOTICE OF TRUSTEE'S SALE

00023

#16

```
201004020015
Electronically Recorded
Pierce County, WA
Julie Anderson, Pierce County Auditor
04/02/2010 08:34 AM
Pages: 3    Fee: $ 64.00
```

RECORDING REQUESTED BY
MetLife Home Loans a division of MetLife
Bank NA
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

For reference only, not for re-sale.

3133209
APN: 02-20-07-8-085

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: WA-09-248713-SH

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.       NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 7/2/2010, at 10:00 AM At the main entrance to the Superior Courthouse, 930 Tacoma Avenue, Tacoma, WA sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of PIERCE, State of Washington, to-wit:

A PTN OF LOTS 1 PIERCE COUNTY SHORT PLAT NUMBER 200005195001

Commonly known as:
1221 14TH AVENUE
FOX ISLAND, WA 98333

which is subject to that certain Deed of Trust dated 8/25/2006, recorded 9/6/2006, under Auditor's File No. 200609066376, in Book XXX, Page XXX records of PIERCE County, Washington, from DEBORAH TOWNSEND AND SCOTT TOWNSEND, WIFE AND HUSBAND, as Grantor(s), to CHICAGO TITLE INSURANCE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIRST HORIZON HOME LOAN CORPORATION, as Beneficiary.

II.      No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.     The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: $92,872.91

IV.     The sum owing on the obligation secured by the Deed of Trust is: The principal sum of $650,000.00 together with interest as provided in the Note from the 11/1/2008, and such other costs and fees as are provided by statute.

EXhibit I

00024

T.S. No.: WA-09-248713-SH

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 7/2/2010. The defaults referred to in Paragraph III must be cured by 6/21/2010 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 6/21/2010 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 6/21/2010 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.    A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

| NAME | ADDRESS |
|---|---|
| DEBORAH TOWNSEND AND SCOTT | 1221 14TH AVENUE |
| TOWNSEND, WIFE AND HUSBAND | FOX ISLAND, WA 98333 |

by both first class and certified mail on 2/18/2005, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.    Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.    NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For reference only, not for re-sale.

00025

T.S. No.: WA-09-248713-SH

DATED: 3/29/2010

Quality Loan Service Corp. of Washington, as Trustee
By: Tara Dezzella, Assistant Vice President

For Non-Sale, Payoff and Reinstatement info
Quality Loan Service Corp of Washington
2141 Fifth Avenue
San Diego, CA 92101
(866) 645-7711
Sale Line: 714-573-1965 or Login to:
www.priorityposting.com

For Service of Process on Trustee:
Quality Loan Service Corp., of Washington
19735 10th Avenue NE
Suite N-200
Poulsbo, WA 98370
(866) 645-7711

State of California)
County of San Diego)

On 3/29/10 before me, N. Fuentes a notary public, personally appeared Tara Dezzella, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
N. Fuentes

N. FUENTES
Commission # 1816432
Notary Public - California
San Diego County
My Comm. Expires Oct 18, 2012

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 2

# DEED OF TRUST

200609060376.001

SEP -- 2006
CHICAGO TITLE

200609060376    28   PGS
09/06/2006 1:03pm $52.00
PIERCE COUNTY, WASHINGTON

Return To:
FHHLC - POST CLOSING MAIL ROOM

1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

Assessor's Parcel or Account Number: County: 02-20-07-8-005 & 02-20-078-006 AOP City:
Abbreviated Legal Description: A PTN OF LOTS 1 AND 2,
PIERCE COUNTY SHORT PLAT NUMBER 200005195001
[Include lot, block and plat or section, township and range]          Full legal description located on page   3
Trustee: CHICAGO TITLE INSURANCE COMPANY
            4717 SOUTH 19TH                          Additional Grantees located on page  N/A
            TACOMA, WA 98405 ─────[Space Above This Line For Recording Data]───── ▇▇▇▇5993

# DEED OF TRUST

MIN    100085200584639936

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
(A) "Security Instrument" means this document, which is dated   August 25th, 2006
together with all Riders to this document.
(B) "Borrower" is
DEBORAH TOWNSEND &
SCOTT TOWNSEND, Wife & Husband

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
FIRST HORIZON HOME LOAN CORPORATION

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

⬤ -6A(WA) (0012)      Form 3048 1/01
Page 1 of 15         Initials:
VMP MORTGAGE FORMS - (800)521-7291

Exhibit 2

00028

200609060376.002

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF KANSAS
Lender's address is 4000 Horizon Way, Irving, Texas 75063

(D) "Trustee" is CHICAGO TITLE INSURANCE COMPANY
    4717 SOUTH 19TH, TACOMA, WA 98405
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated August 25th, 2006
The Note states that Borrower owes Lender
    SIX HUNDRED FIFTY THOUSAND & 00/100                                     Dollars
(U.S. $      650,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

███53993

█████-6A(WA) (0012)                    Page 2 of 15                    Initials: _____    Form 3048 1/01

00029

200609060376.003

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          Pierce                                :

                        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number: County: 02-20-07-8-005 ~~& 02-20-079-009~~ which currently has the address of

1221 14TH AVENUE                                                                [Street]

FOX ISLAND                          [City] , Washington    98333          [Zip Code]

("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

█████3993

⊙ -6A(WA) (0012)                    Page 3 of 15          Initials____          Form 3048  1/01

00030

200609060376.004

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any

Initials: DT AV

-6A(WA) (0012)          Page 4 of 15          Form 3048  1/01

200609060376.005

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _DT_ _JV_

-6A(WA) (0012)     Page 5 of 15     Form 3048  1/01

00032

200609060376.006

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

Initials: _DT M_

-6A(WA) (0012)                          Page 6 of 15                          Form 3048  1/01

200609060376.007

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials:

-6A(WA) (0012)                    Page 7 of 15                    Form 3048  1/01

00034

200609060376.008

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

00035

200609060376.009

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

-6A(WA) (0012)                    Page 9 of 15                    Initials: ____    Form 3048  1/01

00036

200609060376.010

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

-6A(WA) (0012)                        Page 10 of 15                    Initials:                      Form 3048 1/01

00037

200609060376.011

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check

Initials

-6A(WA) (0012)                    Page 11 of 15                    Form 3048  1/01

00038

200609060376.012

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

Initials: ___

-6A(WA) (0012)                    Page 12 of 15                    Form 3048  1/01

00039

200609060376.013

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

-6A(WA) (0012)                    Page 13 of 15                    Initials:                    Form 3048  1/01

00040

200609060376.014

25. Use of Property. The Property is not used principally for agricultural purposes.
26. Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          DEBORAH TOWNSEND              -Borrower

_____          _____ (Seal)
                                          SCOTT TOWNSEND               -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                       -Borrower

3993

-6A(WA) (0012)          Page 14 of 15          Form 3048  1/01

00041

200609060376.015

**STATE OF WASHINGTON**
County of      **PIERCE**                                                }ss:
      On this day personally appeared before me
DEBORAH TOWNSEND & SCOTT TOWNSEND


to me known to be the individual(s) described in and who executed the within and foregoing instrument, and
acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses
and purposes therein mentioned.
      GIVEN under my hand and official seal this      1st      day of Sept . 2006

Notary Public in and for the State of Washington, residing at
                              Olympia
My Appointment Expires on   1-15-08

993
-6A(WA) (0012)                        Page 15 of 15          Initials          Form 3048  1/01

00042

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 3

# ASSIGNMENT OF DEED OF TRUST

# RECORDED 03/30/2009



For reference only, not for re-sale.

200903306543   1  PG
03/30/2009 2:00pm $14.00
PIERCE COUNTY, WASHINGTON

Recording requested by:

America Default Services Company

When recorded mail to:

MetLife Home Loans a division of MetLife Bank NA
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

| | SPACE ABOVE THIS LINE FOR RECORDER'S USE |
|---|---|
| APN : 02-20-07-8-005 Ln No.: 0058463993 | TS No.: WA-09-248713-SH |
| Order No.: 3133209 | |

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL ASSOCIATION.**

all beneficial interest under that certain Deed of Trust dated 8/25/2006 executed by DEBORAH TOWNSEND AND SCOTT TOWNSEND, WIFE AND HUSBAND, as Trustor(s) to CHICAGO TITLE INSURANCE COMPANY, as Trustee and recorded as Instrument No. 200609060376, on 9/6/2006, in Book XXX, Page XXX of Official Records, in the office of the County Recorder of PIERCE County, WA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: 2/13/2009 8:13 AM

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC AS NOMINEE FOR FIRST HORIZON
HOME LOAN CORPORATION

By: _____
Wanda Collier
Assistant Secretary

State of _____ Texas _____  )
                                          ) ss
County of _____ Dallas _____  )

On **3-19-09** before me, **Penny Lawson** _____ the undersigned Notary Public, personally appeared **Wanda Collier** _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____
Signature

(Seal)

PENNY LAWSON
NOTARY PUBLIC
STATE OF TEXAS
08-27-2011

Exhibit 3

14

00044

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 4

# ASSIGNMENT OF DEED OF TRUST

# RECORDED 03/16/2012

201203160478 Page 1 of 2

201203160478 CCRNITA         2 PGS
03/16/2012 02:12:29 PM    $15.00
AUDITOR, Pierce County, WASHINGTON

For reference only, not for re-sale.

When recorded mail to:

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

TS No.: WA-09-248713-SH
Order No.: 30020519
APN No.: 02-20-07-8-095
MERS MIN No.: 100085200584639936          MERS Telephone No. 1-888-679-6377

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK
NATIONAL ASSOCIATION, hereby grants, assigns, and transfers to

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the
Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2006-AA6, by
First Horizon Home Loans, a division of First Tennessee Bank National Association, Master
Servicer, in its capacity as agent for the Trustee under the Pooling and Servicing Agreement

All beneficial interest and all rights accrued or to accrue, under that certain Deed of Trust dated
8/25/2006 executed by DEBORAH TOWNSEND AND SCOTT TOWNSEND, WIFE AND
HUSBAND, as Trustor(s) to CHICAGO TITLE INSURANCE COMPANY, as Trustee and recorded
as instrument No. 200609060376, on 9/6/2006, of Official Records, , in the office of the County
Recorder of PIERCE County, WA, that secures the underlying promissory note.

Said Deed of Trust encumbers the real property fully described as:

A PTN OF LOTS 1 PIERCE COUNTY SHORT PLAT NUMBER 200005195001

And more commonly known as: 1221 14TH AVENUE, FOX ISLAND, WA 98333

Exhibit 4

00046

TS No.: WA-09-248713-SH

Dated: 3·8·12

Nationstar Mortgage LLC attorney in fact for
FIRST HORIZON HOME LOANS, a division of
FIRST TENNESSEE BANK NATIONAL
ASSOCIATION.

By: _____  3·8·12
      Allison J Fries
      Limited VP, for Nationstar
      Mortgage LLC

State of Texas

County of Denton           ) ss

On March 8, 2012 before me, Brenden Jones the
undersigned Notary Public, personally appeared
                                    Allison J Fries
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____ (Seal)

BRANDON DAVID JONES
Notary Public, State of Texas
My Commission Expires
September 01, 2015

For reference only, not for re-sale.

00047

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 5

# PACER/MOTION FOR RELIEF FROM STAY FILED BY FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK, N.A

1
2
3
4
5
6

The Honorable Paul B Snyder
Chapter 7
Hearing Date: 12/17/2009
Hearing Time: 9:00am
Location: Union Station, Courtroom H
1717 Pacific Avenue, Tacoma, WA
Response Date: 12/10/2009

7
8

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| 9  | In re: | Case No.: 09-47534-PBS |
|----|--------|------------------------|
| 10 | Scott W Townsend | Chapter    7 |
| 11 | Deborah L Townsend | |
| 12 | Debtors | MOTION FOR RELIEF FROM STAY and NOTICE OF HEARING |

13

<u>**NOTICE OF HEARING**</u>

14      PLEASE TAKE NOTICE that the Motion for Relief from the Automatic Stay (the

15 "Motion") filed by First Horizon Home Loans, a division of First Tennessee Bank National

16 Association, is set for hearing as follows:

17
18      Judge: Paul B Snyder                    Time: 9:00am
        Place: Union Station, Courtroom H
19      1717 Pacific Avenue, Tacoma, WA         Date: 12/17/2009

20      IF YOU OPPOSE the Motion, you must file and serve your response NO LATER THAN

21 THE RESPONSE DATE which is 7 days prior to the hearing.  IF NO RESPONSE IS TIMELY

22 FILED AND SERVED, the Court may, in its discretion, GRANT THE MOTION PRIOR TO

23 THE HEARING WITHOUT FURTHER NOTICE, and strike the hearing.

24
25

Notice of Hearing - 1
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

Case 09-47534-PBS    Doc 18    Filed 11/20/09    Ent. 11/20/09 12:35:23    Pg. 1 of 8

## MOTION

1  Pursuant to 11 USC §362(d)(1) and (2), First Horizon Home Loans, a division of First

Tennessee Bank National Association ("Secured Creditor") moves this court for an Order

Terminating the Automatic Stay. In support of the Motion, Secured Creditor alleges:

1. This Bankruptcy was filed on 10/08/2009.

2. This Motion affects the real property commonly known as **1221 14th Avenue, Fox Island, WA 98333** (the "Property"). The full legal description of the Property is listed on the Deed of Trust.

3. This Motion seeks relief from the stay only, and does not seek to establish or determine any of Secured Party's legal interests, if any, in the Property

4. Secured Creditor has standing to bring this Motion because it is the owner and Holder of the Original Promissory Note that creates the loan obligation. It is also the beneficiary under the Deed of Trust that encumbers the Property.  Secured Creditor is entitled to receive the payments made by the Debtors under the Note. Secured Creditor is entitled to enforce the terms of the security instruments encumbering the Property.

5. Secured Creditor is entitled to rely on its pleadings to establish standing. "In ruling on a FED. R. CIV. P. 12(b)(6) motion to dismiss for lack of standing, we must construe the complaint in favor of the complaining party." Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1080-81 (9th Cir. 1987).  Secured Creditor is entitled to rely on its assertion that it has standing unless a party offers evidence otherwise. The burden of proof of disproving standing is on the non-moving party. 11 U.S.C. §362(g)(2).

6. Stay relief may be requested by *"a party in interest."* 11 U.S.C. §362(d). This term is broader than *"the real party in interest."* Federal Rule of Procedure 17(a)(1)(f) further

Motion for Relief - 1
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

00050

1    provides that "a party with whom or in whose name a contract has been made *for the*

2    *benefit of another*…may sue in that person's own name without joining the party for

3    whose benefit the action is brought" (emphasis added).  This is not limited to a creditor,

4    but can be *any party* with an interest in the matter.

5    The statutes regarding standing and parties in interest are intended to be read liberally.

6
7    Subsection (d) grants relief from the automatic stay, under certain conditions, to
     "a party in interest." Had Congress intended the section to apply only to secured
8    creditors, it undoubtedly would have so stated. Further, nothing in the legislative
     history implies that Congress intended the restrictive application [Debtor] urges.
9    *See* S. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* [1978]  U.S. Code
     Cong. & Ad. News 5838.
10   ***

11   While we agree that Congress intended that the automatic stay have broad
     application, the legislative history to § 362 clearly indicates that Congress
12   recognized that the stay should be lifted in appropriate circumstances. It states:
     It will often be more appropriate to permit proceedings to continue in their place
13   of origin, when no great prejudice to the bankruptcy estate would result, in order
     to leave the parties to their chosen forum and to relieve the bankruptcy court from
14   many duties that may be handled elsewhere.

15   *In re Honosky,* 6 Bankr. 667, 669 (S.D.W.Va. 1980) *citing* S. Rep. No. 989, 95th
     Cong., 2d Sess. 50, *reprinted in* [1978] U.S. Code Cong. & Ad. News 5836.
16

17   7.   The loan was originally incurred on 08/25/2006.  The Deed of Trust was recorded in

18        Pierce County, Washington, and properly encumbers the Property and secures payment

19        of the Promissory Note. The Note was assigned and sold to Secured Creditor. Secured

20        Creditor owns the Note.

21   8.   Debtors have defaulted in payments under the Note and Deed of Trust as listed below.

22        The default figures stated below should not be relied upon for reinstatement as additional

23        monthly payments, interest and other fees may be accruing or have accrued under the

24        terms of the Deed of Trust.  A current reinstatement or payoff statement may be obtained

25        upon request.

Motion for Relief - 2
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

00051

| 1 |

| | Payments: 11/1/08 - 11/1/09 | 13 | At | $ | 4,807.39 | $ | 62,496.07 |
|---|---|---|---|---|---|---|---|
| | Late Charges: | | | | | $ | 894.88 |
| | Corporate Advances: | | | | | $ | 2,555.40 |
| | **Total Default:** | | | | | $ | 65,946.35 |
| | **Total Owed to Secured Creditor:** | | | | | $ | 712,303.48 |

9.   The legislative history of the Bankruptcy Code directs that a motion for relief is to be

treated analogous to an injunction, and that the stay should only remain in place if there is

a "reasonable likelihood that the party opposing the relief from stay will prevail at the

final hearing."  Thus, the *opposing party* must establish factual grounds that they will win

at the final hearing. Simply objecting to the motion based on complaints of inadequate

proof by the Secured Creditor is inadequate. It is the *opposing party's* burden to prove

that the Stay should remain in effect. 11 U.S.C. §362(g)(2). If the opposing party does not

establish this, then the stay relief should be granted.

> After a preliminary hearing, the court may continue the stay only if there is a
> reasonable likelihood that the party opposing relief from the stay will prevail at
> the final hearing. Because the stay is essentially an injunction, the three stages of
> the stay may be analogized to the three stages of an injunction. The filing of the
> petition which gives rise to the automatic stay is similar to a temporary restraining
> order. The preliminary hearing is similar to the hearing on a preliminary
> injunction, and the final hearing and order are similar to the hearing and issuance
> or denial of a permanent injunction. The main difference lies in which party must
> bring the issue before the court. While in the injunction setting, the party seeking
> the injunction must prosecute the action, in proceedings for relief from the

Motion for Relief - 3
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

Case 09-47534-PBS   Doc 18   Filed 11/20/09   Ent. 11/20/09 12:35:23   Pg. 4 of 8

00052

automatic stay, the enjoined party must move. The difference does not, however, shift the burden of proof. Subsection (g) leaves that burden on the party opposing relief from the stay (that is, on the party seeking continuance of the injunction) on the issue of adequate protection and existence of an equity.

(H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340-344.)

10.   The only issues that are to be addressed in the motion for relief are the creditor's

adequate protection, the debtor's equity in the property, and the necessity of the property

for an effective reorganization.  Other issues, or issues that can be raised in state court or

by adversary proceeding, are inappropriate in evaluating the motion for relief.

    The action commenced by the party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under subsection (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters.

(S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) pp. 52, 53, 55.)

11.   Under 11 U.S.C. 362 (d), any party in interest may move for stay relief.  If a party in

interest moves for stay relief, the Court *must* grant relief for cause or if there is a lack of

equity in the property and it is not necessary for a reorganization:

    d) On request of *a party in interest* and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
        (1) for cause, including the lack of adequate protection of an interest in property *of such party in interest*;
        (2) with respect to a stay of an act against property under subsection (a) of this section, if—
            (A) the debtor does not have an equity in such property; and
            (B) such property is not necessary to an effective reorganization;

Motion for Relief - 4
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

00053

11 U.S.C. §362(d) (emphasis added)

12.     The Ninth Circuit Court of Appeals has also squarely addressed this issue. The

Bankruptcy Court is not to evaluate the merits of the underlying claim as part of the stay

relief motion.  The Bankruptcy Court's role is limited to determining whether the creditor

is adequately protected.  If not, then the court must grant stay relief regardless of whether

the court believes that the creditor will ultimately prevail on the merits in state court:

> Stay litigation is limited to issues of the lack of adequate protection, the debtor's
> equity in the property, and the necessity of the property to an effective
> reorganization. Hearings on relief from the automatic stay are thus handled in a
> summary fashion. In re Cedar Bayou, Ltd., 456 F. Supp. 278, 284 (W.D. Pa.
> 1978).  *The validity of the claim or contract underlying the claim is not litigated
> during the hearing.* The action seeking relief from the stay is not the assertion of a
> claim which would give rise to the right or obligation to assert a counterclaim. In
> re Essex Properties, Ltd., 430 F. Supp. 1112 (N.D. Cal. 1977). See S. Rep. No.
> 989, 95th Cong., 2d Sess. 55, reprinted in 1978 U.S. Code Cong. & Ad. News,
> 5787, 5841. *Thus, the state law governing contractual relationships is not
> considered in stay litigation.*
>
> In Re: Johnson, 756 F.2d 738, 740 (9th Cir., 1985).

13.     A foreclosure proceeding may have commenced, details of which were not available at

the time this Motion was filed.

14.     In addition to the delinquencies listed above, the Court should grant the Motion for the

following reasons:

a.     Debtors have failed to make post-petition loan payments.

b.     Debtors do not have the ability to continue to make payments during the pendency of

the bankruptcy case. Therefore, Secured Creditor is not adequately protected.

Motion for Relief - 5
MH# WA09-48261

McCarthy & Holthus, LLP
19735 10th Ave NE Suite N200
Poulsbo, WA 98370
206.319.9100

Case 09-47534-PBS   Doc 18   Filed 11/20/09   Ent. 11/20/09 12:35:23   Pg. 6 of 8

00054

c. The continuation of the automatic stay will cause irreparable harm to Secured Creditor and will deprive Secured Creditor of adequate protection to which it is entitled under 11 U.S.C. §362 and §363.

d. Debtors have insufficient equity to protect Secured Creditor's interest during the bankruptcy proceeding.

e. The Property is not necessary for an effective reorganization.

f. Debtors intend to surrender the Property.

15. The following documents are attached as Exhibits to this Motion:

a. Exhibit 1 - Secured Creditor's file copy of the Promissory Note.

b. Exhibit 2 - Copy of Deed of Trust.

c. Exhibit 3 - Copy of Assignment of the Deed of Trust.

WHEREFORE, Secured Creditor requests:

1. An Order Terminating the Automatic Stay.

2. An Order waiving the 10-day stay pursuant to Bankruptcy Rule 4001(a)(3).

3. Alternatively, for an Order requiring adequate protection of Secured Creditor's interest in the Property.

4. For attorney fees and costs incurred herein.

5. For such other relief as the Court deems proper.

Dated: November 20, 2009            McCarthy & Holthus, LLP

                                    /s/ Angela M. Michael
                                    Matthew R. Cleverley, Esq., WSBA #32055
                                    Angela M. Michael, Esq., WSBA #37727
                                    Joni M. Derifield, Esq., WSBA #34268
                                    Attorneys for Secured Creditor

Motion for Relief - 6                          McCarthy & Holthus, LLP
MH# WA09-48261                                 19735 10th Ave NE Suite N200
                                               Poulsbo, WA 98370
                                               206.319.9100

00055

1

## CERTIFICATE OF SERVICE

2      On 11/20/2009, I served the foregoing **MOTION FOR RELIEF FROM STAY and NOTICE OF HEARING** on the following individuals by electronic means through the Court's ECF program:

3      COUNSEL FOR DEBTORS
       Noel P. Shillito
4      shillito@callatg.com

5      TRUSTEE
       Terrence J. Donahue
6      bankruptcy@eisenhowerlaw.com

7      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

8                                            /s/ Cretu Andrada
                                             Cretu Andrada
9

10     On 11/20/2009, I served the foregoing **MOTION FOR RELIEF FROM STAY and NOTICE OF HEARING** on the following individuals by depositing true copies thereof in the United States mail, enclosed in a sealed envelope, with postage paid, addressed as follows:

11

12     DEBTORS
       Scott W Townsend
       Deborah L Townsend
13     PO Box 491
       Fox Island, WA 98333
14

15     SPECIAL NOTICE
       ALS - GE Recovery Management Systems Corporation
16     25 SE 2nd Avenue #1120
       Miami, FL 33131-1605

17     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
18

19                                           /s/ Hue Banh
                                             Hue Banh
20

21

22

23

24

25     Motion for Relief - 7                          McCarthy & Holthus, LLP
       MH#WA09-48261                                   19735 10th Ave NE Suite N200
                                                       Poulsbo, WA 98370
                                                       206.319.9100

00056

# EXHIBIT 1

00057

██████ 993

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| August 25th, 2006 | TACOMA | WASHINGTON |
|---|---|---|
| [Date] | [City] | [State] |

**1221 14TH AVENUE, FOX ISLAND, Washington 98333**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    650,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**FIRST HORIZON HOME LOAN CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.625    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on    October 1st , 2006    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    September 1st, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO BOX 809
MEMPHIS, TN 38101
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    4,130.21    . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -**
**Single Family - Fannie Mae UNIFORM INSTRUMENT**

Wolters Kluwer Financial Services
VMP®-838N (0210).01                 Form 3520 1/01
Page 1 of 4                                    Initials: _____



00058



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  **September, 2011**  , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **13.625** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO & 00/100** percentage point(s) ( **2.00** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.625** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

VMP®-838N (0210).01                             Page 2 of 4                                 Form 3520 1/01

Initials

00059



**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
**5.00**                    % of my overdue payment of principal and interest. I will pay this late charge promptly but
only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the
interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will
be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address
if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is
also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to
pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.
That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all
amounts I owe under this Note. Some of those conditions read as follows:

VMP®-838N (0210).01                              Page 3 of 4                                Form 3520 1/01
                                                                                           Initials

00060

993

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Deborah Townsend_____ (Seal)     _____ (Seal)
DEBORAH TOWNSEND          -Borrower        SCOTT TOWNSEND          -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

*[Sign Original Only]*

00061

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 6

# LEGAL DESCRIPTION OF THE PROPERTY OF 1221 14TH AVE, FOX ISLAND, WA

200609060376.016

█████3993

EXHIBIT "A"

## LEGAL DESCRIPTION EXHIBIT

BEGINNING AT THE NORTHWEST CORNER OF LOT 1, PIERCE COUNTY SHORT PLAT
NUMBER 200005195001, ACCORDING TO THE PLAT THEREOF RECORDED MAY 19, 2000,
RECORDS OF PIERCE COUNTY AUDITOR.
THENCE SOUTH 89°32'34" EAST 513.86 FEET;
THENCE SOUTH 00°51'39" WEST 149.23 FEET;
THENCE NORTH 87°47'16" EAST 239.06 FEET;
THENCE SOUTH 80°26'07" EAST 387.61 FEET;
THENCE SOUTH 82°55'58" EAST 201.36 FEET TO THE EAST LINE OF SAID SHORT
PLAT;
THENCE SOUTH ALONG THE EAST LINE OF SAID SHORT PLAT 02°25'22" WEST 107.43
FEET;
THENCE NORTH 89°32'34" WEST 1333.00 FEET TO THE WEST LINE OF SAID SHORT
PLAT;
THENCE NORTH ALONG THE WEST LINE OF SAID SHORT PLAT 00°51'39" EAST 330.00
FEET TO THE POINT OF BEGINNING.

EXCEPT ANY PORTION THEREOF LYING WITHIN 14TH AVENUE.

TOGETHER WITH SECOND CLASS TIDELANDS ABUTTING THEREON.

SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.

00063

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 18 2012 8:30 AM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

1

2

3

4

5

6

7          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                    IN AND FOR THE COUNTY OF PIERCE
8

9    SCOTT TOWSEND & DEBORAH
     TOWNSEND, husband and wife,
                    Plaintiffs,
10
                                              CASE NO: 12-2-10932-5
     vs.
11

12   QUALITY LOAN SERVICE CORP. OF
     WASHINGTON; THE ENTITY KNOWN AS
13   "THE BANK OF NEW YORK MELLON,
     F/K/A THE BANK OF NEW YORK, AS
14   TRUSTEE FOR THE HOLDERS OF THE
     CERTIFICATES, FIRST HORIZON
15   MORTGAGE PASS-THROUGH            PLAINTIFF'S DECLARATION IN
     CERTIFICATES SERIES FHAMS 2006-AA6, VERIFICATION OF COMPLAINT
16   BY FIRST HORIZON HOME LOANS, A    AND MOTION TO RESTRAIN
     DIVISION OF FIRST TENNESSEE BANK  TRUSTEE'S SALE
17   NATIONAL ASSOCIATION, MASTER
     SERVICER, IN ITS CAPACITY AS AGENT
18   FOR THE TRUSTEE UNDER THE POOLING
     AND SERVICING AGREEMENT"; FIRST
19   HORIZON HOME LOAN CORPORATION,
     FIRST HORIZON HOME LOANS, A
20   DIVISION OF FIRST TENNESSE BANK,
     N.A.; MORTGAGE ELECTRONIC
21   REGISTRATION SYSTEMS, INC.;
     NATIONSTAR MORTGAGE LLC.
22
                    Defendants.
23

24
                                              ☐ ORIGINAL

     3501 RUCKER AVE, EVERETT WA 98201
     727-269-9334/FAX 727-264-2447
     PLAINTIFF'S DECLARATION

00064

1

2    The undersigned, Deborah Towsend, Plaintiff, declares under penalty of perjury under the

3    laws of the State of Washington, that I am familiar with the underlying facts of my case, that I

4    have personally reviewed all statements of fact and documents referred to and set forth in

5    Plaintiffs' Motion to Restrain Trustee's Sale as prepared by my counsel and ascertained that

6    they are true and correct and are made based on my personal knowledge.

7        I declare that my husband, Scott Townsend, and I, as owners the property 1221 14th Ave, Fox

8    Island, which is subject to Trustee's Sale, are moving the Court for an Order Restraining the

9    Trustee's Sale based on the questionable conduct of the Trustee, Quality Loan Service Corp. of

10   Washington, and the doubtful nature of numerous documents that have been filed in the public

11   records and which are being used to facilitate the Trustee's sale of our property.

12       I declare further that I am prepared to testify to the same facts in a court of law.

13       DATED this 16th day of July, 2012.

14

15   *Deborah Townsend*
     DEBORAH TOWNSEND, Plaintiff

16

17

18

19

20

21

22

23

24

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 18 2012 8:30 AM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-10932-5

1

2

3

4

5

6

7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

8

9
SCOTT TOWNSEND & DEBORAH
TOWNSEND, husband and wife,
            Plaintiffs,

10

11
        vs.

CASE NO: 12-2-10932-5

12
QUALITY LOAN SERVICE CORP. OF
WASHINGTON; THE ENTITY KNOWN AS
13
"THE BANK OF NEW YORK MELLON,
F/K/A THE BANK OF NEW YORK, AS
TRUSTEE FOR THE HOLDERS OF THE
14
CERTIFICATES, FIRST HORIZON
MORTGAGE PASS-THROUGH

MOTION FOR EX PARTE ORDER TO
SHOW CAUSE AS TO WHY
TRUSTEE'S SALE SHOULD NOT BE
RESTRAINED

15
CERTIFICATES SERIES FHAMS 2006-AA6,
BY FIRST HORIZON HOME LOANS, A
16
DIVISION OF FIRST TENNESSEE BANK
NATIONAL ASSOCIATION, MASTER
17
SERVICER, IN ITS CAPACITY AS AGENT
FOR THE TRUSTEE UNDER THE POOLING
18
AND SERVICING AGREEMENT";  FIRST
HORIZON HOME LOAN CORPORATION,
19
FIRST HORIZON HOME LOANS, A
DIVISION OF FIRST TENNESSE BANK,
20
N.A.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
21
NATIONSTAR MORTGAGE LLC.

22
            Defendants.

23

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*MOTION TO RESTRAIN FORECLOSURE* – 1

00066

1

## I.  RELIEF REQUESTED

2        Pursuant to RCW 61.24.130(1), Plaintiffs, by and through their counsel, Ha Thu Dao, Esq.,

3    move to restrain the nonjudicial foreclosure of their home as initiated by Defendant QUALITY

4    LOAN SERVICE CORP. OF WASHINGTON, with the involvement, assistance and production

5    of supporting documents from all the named defendants including THE ENTITY KNOWN AS

6    "THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE

7    FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-

8    THROUGH CERTIFICATES SERIES FHAMS 2006-AA6, BY FIRST HORIZON HOME

9    LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION,

10   MASTER SERVICER, IN ITS CAPACITY AS AGENT FOR THE TRUSTEE UNDER THE

11   POOLING AND SERVICING AGREEMENT";  FIRST HORIZON HOME LOAN

12   CORPORATION, FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSE

13   BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;

14   NATIONSTAR MORTGAGE LLC.  The statute allows for a Temporary Restraining Order on

15   "any proper ground" upon five-day notice to the trustee, in this case, is Defendant Quality Loan

16   Service Corp. of Washington ("Quality").  The Plaintiffs request that an Order be issued

17   directing Defendant Trustee to appear and show cause, if any it may have. **This Motion is being**

18   **verified by Plaintiff Deborah Townsend by her Declaration as attached.**

19              ## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

20       1.  Quality Loan Service Corp. of Washington ("Quality") has issued and recorded

21              several notices of Trustee's Sale against the Plaintiffs and their homestead located at

22              1221 14th Avenue, Fox Island, WA.  The most recent Notice of Trustee's Sale

23              recorded on April 23, 2012, states that the sale date is scheduled for July 20, 2012

24

1   (Exhibit 1, 4/23/12 Notice of Trustee's Sale). However, when Plaintiffs called the

2   dedicated telephone line to determine the status of the foreclosure sale, they learned

3   that the sale date has been postponed to July 27, 2012, "at the Trustee's discretion."

4   (Declaration of Deborah Townsend in support of Motion for TRO).

5   2.   **The subject Notice of Trustee's Sale refers to the certain Deed of Trust executed**

6   **by Plaintiffs in 2006. In this DOT, the original lender is First Horizon Home**

7   **Loan Corp., a Kansas corporation, the nominee is Mortgage Electronic**

8   **Registration Systems Inc. or MERS, a Delaware corporation, and the Trustee**

9   **with the power of sale is Chicago Title Insurance Company** (Exhibit 2, DOT).

10   3.   There is nothing in the public records to indicate that Chicago Title has resigned as

11   trustee under the DOT. Similarly, there is nothing to support Quality's claim to be the

12   trustee under the subject DOT who possesses the power of sale as provided for in

13   RCW 61.24.010 (2).

14   4.   **Despite the lack of any authority to act as trustee under the DOT, Quality has**

15   **issued no less than six Notices of Trustee's Sale and recorded the same in the**

16   **public records.** In addition to the Notice of April 2012, there were Notices of

17   12/31/2009, Instrument No. 200912310306; 3/17/2010, Instrument No.

18   201003170204;  4/2/2010, Instrument No. 201004020015; 1/20/2011, Instrument No.

19   201101200432; 6/2/2011, Instrument No. 201106020039.

20   5.   As mentioned, **when the DOT was executed in September of 2006, it lists First**

21   **Horizon Home Loan Corporation as Lender and MERS as nominee and**

22   **beneficiary. On 3/30/2009, an Assignment of Deed of Trust was recorded in the**

23   **public records of Pierce County to memorialize how MERS had assigned "all**

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*MOTION TO RESTRAIN FORECLOSURE – 3*

00068

1   beneficial interest to First Horizon Home Loans, a division of First Tennessee

2   Bank National Association." (Exhibit 3, Assignment of Deed of Trust).

3   6.   The entity that one of the Notices of Trustee's Sale refers to as the preparer of

4   documents is MetLife Home Loans a division of MetLife Bank, N.A.  On MetLife

5   Home Loans's webpage, the company explains that "In September 2008, MetLife

6   Home Loans officially acquired First Horizon Home Loans, the residential

7   origination and servicing division of First Tennessee Bank National Association,

8   a subsidiary of First Horizon National Corporation. As a result of this

9   acquisition, First Horizon Home Loans is now MetLife Home Loans."

10   https://secure.wholesale.metlifehomeloans.com/un_about.htm. Why MERS assigned

11   First Horizon Home Loans, a division of First Tennessee Bank, NA, in 2009 and not

12   MetLife Home Loans who had acquired the entity in 2008 remains unclear.

13   7.   To add on to the mystery, on March 30, 2012, three years later, another

14   Assignment of Deed of Trust was recorded in the public records. This document

15   memorializes First Horizon Home Loans, a division of First Tennessee Bank

16   National Association's act of assigning to "The Bank of New York Mellon, f/k/a

17   The Bank of New York, as Trustee for the holders of the Certificates, First

18   Horizon Mortgage Pass-Through Certifies Series FHAMS 2006-AA6, by First

19   Horizon Home Loans, a division of First Tennessee Bank National Association,

20   Master Servicer, in its capacity as agent for the Trustee under the Pooling and

21   Servicing Agreement." (Exhibit 4, Assignment of Deed of Trust recorded

22   3/16/2012) .

23   8.   According to this document as recorded in the public records, the mortgage loan,

24

1    including the power of sale, was now transferred to a 2006-securitized trust. **Despite**

2    **the fact that securitized trusts are registered with the SEC and their Pooling and**

3    **Servicing Agreements can be readily located on the SEC's website, this**

4    **particular securitized trust as identified on the Second Assignment of Deed of**

5    **Trust cannot be located**.  The Assignment was executed by yet another entity,

6    Nationstar Mortgage LLC, attorney in fact for First Horizon Home Loans, a division

7    of First Tennessee Bank National Association (Exhibit 4,  Assignment of DOT

8    recorded 3/16/2012). This declaration was made despite the lack of any power of

9    attorney being produced whatsoever.

10   9.   The law firm of McCarthy & Holthus , LLP, had represented to the United States

11        District Court, Western District of Washington Bankruptcy Court in Case No. 09-

12        47534, that First Horizon Home Loans, a division of First Tennessee Bank, N.A. is

13        "Owner and Holder of the Original Promissory Note that creates the loan obligation."

14        The law firm further asserted that First Horizon Home Loans, a division of First

15        Tennessee Bank, N.A., is "also the beneficiary under the Deed of Trust that

16        encumbers the property."  The law firm filed a copy of the Promissory Note in

17        support of this assertion which has no endorsement to First Horizon Home Loans, a

18        division of First Tennessee Bank, N.A., or an allonge to substantiate its claim that the

19        Note was assigned or sold; the Note remains in the original lender's name. (PACER

20        Case 09-47534, Doc. 18, filed 11/20/2009).

21                          **V.  LEGAL ARGUMENTS**

22        **There are sufficient grounds upon which the foreclosure should be restrained**

23   **Ground One. Quality does not have authority to act as successor trustee**. It is undisputed

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*MOTION TO RESTRAIN FORECLOSURE – 5*

1    that the original trustee named in the Deed of Trust is Chicago Title. It is further undisputed that

2    there is no notice of resignation of trustee/appointment of a successor trustee filed in Pierce

3    County where the Plaintiffs' home is located. RCW 61.24.010(2) specifies that "Only upon

4    recording the appointment of a successor trustee in each county in which the deed of trust is

5    recorded, the successor trustee shall be vested with all powers of an original trustee." Failing to

6    strictly adhere to the mandate of the statute means that Quality, whose name is not on the Deed

7    of Trust and who has not been appointed as successor trustee, is without any power to act on

8    behalf of the Beneficiary. *GMAC Mortgage Co. v. Wynkoop*, 2007 Wash. App. LEXIS 2813

9    (Wash. Ct. App., Oct. 8, 2007) .

10   **Ground Two. Pursuant to RCW 61.24.040(1)(a), the Notice of Trustee's Sale must be**

11   **recorded at least 90 days prior to the scheduled foreclosure sale**; however, the Notice of

12   Trustee's Sale in this case was not recorded until April 23, 2012, which is 88 days before the

13   scheduled sale date of July 20, 2012.  Therefore, the Notice of Trustee's sale is invalid.

14   **Ground Three. The identity of the Beneficiary under the Deed of Trust cannot be**

15   **ascertained**. Under the Deed of Trust Act, the trustee must have proof that the beneficiary is the

16   owner of any promissory note or other obligations secured by the deed of trust before issuing a

17   notice of trustee's sale. RCW 61.24, *et. seq.*. Here, Quality's half a dozen notices of trustee's sale

18   as recorded in the public records of Pierce County raise more questions than answers as to the

19   role that Quality actually plays in the foreclosure. The multiple Assignments of Deed of Trust

20   purporting to clarify actually obscures the issue of ownership of the Note and Mortgage.

21           The facts in *Grant v. First Horizon Home Loans*, 2012 Wash.App. LEXIS 1246 (Court of

22   Appeals of Washington, Division One May 29, 2012) are nearly identical to our facts. In *Grant,*

23   the trustee is Quality Loan Service, the original lender is First Horizon Home Loans, MERS as

24

1   nominee assigned the interest and rights under the note and mortgage to Bank of New York

2   Mellon trustee of a securitized trust who claims to be the ultimate owner/holder of the mortgage

3   loan.  Under these facts, as to MERS, the *Grant* court stated that while Bank of New York

4   alleged to have acquired whatever interest it has in the note and deed of trust by assignment from

5   MERS, nothing in the record established conclusively that MERS had any interest in the note to

6   convey: "The note makes no mention of MERS. It identifies only 'First Horizon Corporation

7   d/b/a First Horizon Home Loans' as the 'Note Holder'. There is no evidence that First Horizon

8   transferred the note to MERS or to BNYM." *Id.*   In this case, the Note is made payable to First

9   Horizon Home Loan Corporation and has no endorsement to MERS or to BNYM.

10   The *Grant* court emphasized that the "foreclosing entity must hold the mortgage *at the*

11   *time* of the notice and sale in order to accurately identify itself as the present holder in the notice

12   and in order to have authority to foreclose under the power of sale", citing to *U.S. Bank v.*

13   *Ibanez,* 458 Mass. 637, 941 N.E.2d 40 (2011).  Under the facts of this case, foreclosure was

14   commenced in 2009 and BNYM did not come into any ownership interest or right of the loan

15   until the Second Assignment of Deed of Trust was recorded in March of 2012. BNYM is thus

16   not the proper party to conclude the foreclosure by proceeding to trustee's sale.

17   Given the doubtful nature of both Quality's authority to act as Trustee for BNYM , and

18   BNYM's claim of ownership and right under the Deed of Trust, this Court, which has

19   jurisdiction over the Plaintiffs' property, and as a matter of equity can grant the relief that is

20   warranted, must restrain the sale until these two questions are answered satisfactorily by these

21   entities. *Hubbell v. Ward,* 40 Wn.2d 779, 787, 246 P.2d. 468 (1952).

22   ## CONCLUSION

23   Based on the foregoing facts and arguments, the Plaintiffs respectfully request the Court

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*MOTION TO RESTRAIN FORECLOSURE – 7*

00072

1  to grant Temporary Injunction to Stay the Foreclosure Sale, to award attorney's fees and costs

2  and any other relief that the Court may deem just.

3       DATED this 17th day of July, 2012.

4

5                      Respectfully Submitted By:

6                      /s/ Ha Thu Dao

7                      HA THU DAO, WSBA 21793
                    Counsel for the Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
*MOTION TO RESTRAIN FORECLOSURE – 8*

00073

1

2

3

4

5

6

7        IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                IN AND FOR THE COUNTY OF PIERCE
8

9    SCOTT TOWNSEND & DEBORAH
     TOWNSEND, husband and wife,
              Plaintiffs,
10

           vs.                              CASE NO: 12-2-10932-5
11

12   QUALITY LOAN SERVICE CORP. OF          DECLARATION OF HA THU DAO
     WASHINGTON, et. al.,                   CERTIFYING EFFORTS TO GIVE
                                            NOTICE AND IN SUPPORT OF
13            Defendants.                   MOTION FOR EX PARTE ORDER

14

15

16        I, HA THU DAO, declare under penalty of perjury under the laws of the State of

17   Washington that the following is true and correct based on my knowledge and belief:

18   I am over the age of 18, and I am counsel for the Plaintiffs Scott Townsend and Deborah

     Townsend.
19

          1.  I was officially retained by the Plaintiffs on Monday, July 16, 2012. Plaintiffs did not
20

              obtain legal representation because they have been involved in short sale and loan
21

              modification processes with the loan servicer and as a result, genuinely believed that
22

              the sale would not take place while these discussions are still ongoing.
23

24

     3501 RUCKER AVE, EVERETT WA 98201
     727-269-9334/FAX 727-264-2447
     COUNSEL'S DECLARATION– 1

2. Although the Trustee's Sale date has been scheduled by Defendant Quality Loan Service Corp. of Washington ("Quality") for July 27, 2012, at 10 a.m., Quality has *unilaterally* re-scheduled the Trustee's Sale five separate times prior. This fact lends credence to the Plaintiffs' claim that because they were actively involved in short sale negotiation or loan modification that the Defendants would suspend foreclosure efforts.

3. Upon being retained, I immediately contacted Defendant Quality Loan Service Corp. of Washington, via telephone and fax, in order to inform the company of my involvement and to explore possible resolution of the matter. It was difficult to get anyone one to speak with me about the matter as I was either transferred to the "wrong department", or to someone who was out of the office. On July 16, 2012, I sent a letter via fax and email to Angela Michael, Esq., of McCarthy & Holthus, LLP, who appeared previously in the bankruptcy court's case involving the Plaintiffs as debtors, but did not have the benefit of a response.

4. When I was finally able to speak to an individual by the name of Teri Camacho, she confirmed that the sale date is scheduled for July 27, 2012. Ms. Camacho advised that Quality would need authority from Defendant Nationstar to take any action regarding the loan and the sale date. However, Ms. Camacho did not have a fax or the name of a particular person from Nationstar to offer me.

5. I have reviewed with the Plaintiffs all the Notices of Trustee's Sale, the Assignments of Deed of Trust, the Deed of Trust, and the Promissory Note which are either recorded in the public records, or filed with the Western District Bankruptcy Court under case number 09-47534 and found numerous defects as well as inconsistencies

1   within, and between these documents.  For example, the Assignment of Deed of Trust

2   from Defendant MERS to Defendant First Horizon Home Loans, a division of First

3   Tennessee Bank, N.A., was dated for 2/13/2009, but not notarized until 3/17/2009.

4   6.   The Plaintiffs' Motion for Temporary Restraining Order is made based on the very

5   documents that have been generated, filed in the public records or in a court of law by

6   the Defendants. These documents directly contradict the Defendants' claims.

7   Amongst them, a) there are no evidence that Quality Loan Service Corp. of

8   Washington, ever been appointed as successor trustee under the DOT; b) the Note

9   produced by McCarthy Holthus, LLP, is unendorsed; c) the first Assignment executed

10  by MERS was in favor of First Horizon Home Loans, a division of First Tennessee

11  Bank, NA, which was purchased by MetLife Home Loans prior to the Assignment

12  being executed and recorded; d) the second Assignment was made in favor of a 2006

13  securitized trust that cannot be located in the SEC's website; e) the second

14  Assignment to the 2006-securitized trust refers to a Pooling and Servicing

15  Agreement, which would reveal the chain of transfer that led to the securitized trust

16  being the owner/holder, but was not produced; f) the second Assignment executed in

17  2012 purportedly transferring rights and interest to a 2006-securitized trust while it is

18  common knowledge that a 2006-securitized trust would have been closed in 2006,

19  and incapable of accepting or including any loans after such date, and g) Nationstar

20  Mortgage LLC executed the second Assignment in its capacity as attorney-in-fact but

21  produced no power of attorney conferring such authority.

22  7.   Given the clear inconsistencies between representations made by McCarthy &

23  Holthus to the Bankruptcy Court and the documents filed in the public records, this

24

1   tribunal has to be assured of the integrity of the foreclosure sale as being attempted by

2   Quality as the alleged Trustee under the Deed of Trust. Additionally, instruments that

3   prove the existence of an agency are required before the execution of any document

4   by an agent on behalf of his/her principal. None was ever produced by the

5   Defendants.

6   8.   Given how the impending Trustee's Sale is less than 10 days, and the fact that

7       Plaintiffs' home will be lost forever before a determination can be made about

8       whether the Defendants possess the legal right to foreclose, an Ex Parte Temporary

9       Restraining Order is absolutely necessary and should be granted based on these

10      blatant defects.  Since a hearing will be scheduled shortly, there is no resulting

11      prejudice to any of the Defendants.

12  9.   As I am filing the Motion, the instant Declaration, and Plaintiff's Declaration in

13      Verification of the Complaint and Motion, I am also serving Defendant Quality as

14      Trustee with a copy of the same, plus a copy of the Complaint and Summons, as filed

15      in court, via fax at 619-568-3574 and USPS Express Mail.

16  DATED this 17th day of July, 2012.

17

18

19      HA THU DAO, Declarant

20

21

22

23

24

3501 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
COUNSEL'S DECLARATION– 4

00077

1

2

3

4

5

6

7    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
     IN AND FOR THE COUNTY OF PIERCE

8

9    SCOTT TOWSEND & DEBORAH
     TOWNSEND, husband and wife,
               Plaintiffs,

10

     vs.                                          CASE NO: 12-2-10932-5

11

     QUALITY LOAN SERVICE CORP. OF
12   WASHINGTON; THE ENTITY KNOWN AS
     "THE BANK OF NEW YORK MELLON,
13   F/K/A THE BANK OF NEW YORK, AS
     TRUSTEE FOR THE HOLDERS OF THE
14   CERTIFICATES, FIRST HORIZON
     MORTGAGE PASS-THROUGH                         PLAINTIFF'S DECLARATION IN
15   CERTIFICATES SERIES FHAMS 2006-AA6,           VERIFICATION OF COMPLAINT
     BY FIRST HORIZON HOME LOANS, A                AND MOTION TO RESTRAIN
16   DIVISION OF FIRST TENNESSEE BANK              TRUSTEE'S SALE
     NATIONAL ASSOCIATION, MASTER
17   SERVICER, IN ITS CAPACITY AS AGENT
     FOR THE TRUSTEE UNDER THE POOLING
18   AND SERVICING AGREEMENT"; FIRST
     HORIZON HOME LOAN CORPORATION,
19   FIRST HORIZON HOME LOANS, A
     DIVISION OF FIRST TENNESE BANK,
20   N.A.; MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.;
21   NATIONSTAR MORTGAGE LLC.

22             Defendants.

23

24

     3501 RUCKER AVE, EVERETT WA 98201
     727-269-9334/FAX 727-264-2447
     PLAINTIFF'S DECLARATION

ORIGINAL

1

2       The undersigned, Deborah Towsend, Plaintiff, declares under penalty of perjury under the

3   laws of the State of Washington, that I am familiar with the underlying facts of my case, that I

4   have personally reviewed all statements of fact and documents referred to and set forth in

5   Plaintiffs' Motion to Restrain Trustee's Sale as prepared by my counsel and ascertained that

6   they are true and correct and are made based on my personal knowledge.

7       I declare that my husband, Scott Townsend, and I, as owners the property 1221 14th Ave, Fox

8   Island, which is subject to Trustee's Sale, are moving the Court for an Order Restraining the

9   Trustee's Sale based on the questionable conduct of the Trustee, Quality Loan Service Corp. of

10  Washington, and the doubtful nature of numerous documents that have been filed in the public

11  records and which are being used to facilitate the Trustee's sale of our property.

12      I declare further that I am prepared to testify to the same facts in a court of law.

13      DATED this 16th day of July, 2012.

14

15                  _Deborah Townsend_

16                  DEBORAH TOWNSEND, Plaintiff

17

18

19

20

21

22

23

24

3500 RUCKER AVE, EVERETT WA 98201
727-269-9334/FAX 727-264-2447
DECLARATION–2

00079

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 1

# NOTICE OF TRUSTEE'S SALE

#66

RECORDING REQUESTED BY
MetLife Home Loans a division of MetLife
Bank NA
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

```
201004020015
Electronically Recorded
Pierce County, WA
Julie Anderson, Pierce County Auditor
04/02/2010 08:34 AM
Pages: 3    Fee: $ 64.00
```

3133209
APN: 02-20-07-8-085

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: WA-09-243713-SH

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.      NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 7/2/2010, at 10:00 AM At the main entrance to the Superior Courthouse, 930 Tacoma Avenue, Tacoma, WA sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of PIERCE, State of Washington, to-wit:

A PTN OF LOTS 1 PIERCE COUNTY SHORT PLAT NUMBER 200005195001

Commonly known as:
1221 14TH AVENUE
FOX ISLAND, WA 98333

which is subject to that certain Deed of Trust dated  8/25/2006, recorded 9/6/2006, under Auditor's File No. 200609060376, in Book XXX, Page XXX records of PIERCE County, Washington, from DEBORAH TOWNSEND AND SCOTT TOWNSEND, WIFE AND HUSBAND, as Grantor(s), to CHICAGO TITLE INSURANCE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR FIRST HORIZON HOME LOAN CORPORATION, as Beneficiary.

II.     No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.    The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: $92,872.91

IV.     The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $650,000.00 together with interest as provided in the Note from the 11/1/2008, and such other costs and fees as are provided by statute.

EXhibit 1

For reference only, not for re-sale.

Unofficial Document

T.S. No.: WA-09-248713-SH

V.      The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 7/2/2010. The defaults referred to in Paragraph III must be cured by 6/21/2010 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 6/21/2010 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 6/21/2010 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.     A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME                                          ADDRESS
DEBORAH TOWNSEND AND SCOTT                     1221 14TH AVENUE
TOWNSEND, WIFE AND HUSBAND                     FOX ISLAND, WA 98333

by both first class and certified mail on 2/18/2005, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.   The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.     Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.      NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For reference only, not for re-sale.

00082

T.S. No.: WA-09-248713-SH

DATED: 3/29/2010

*(signature)*

Quality Loan Service Corp. of Washington, as Trustee
By: Tara Dezzelle, Assistant Vice President

For Non-Sale, Payoff and Reinstatement info
Quality Loan Service Corp of Washington
2141 Fifth Avenue
San Diego, CA 92101
(866) 645-7711
Sale Line: 714-573-1965 or Login to:
www.priorityposting.com

For Service of Process on Trustee:
Quality Loan Service Corp., of Washington
19735 10th Avenue NE
Suite N-200
Poulsbo, WA 98370
(866) 645-7711

State of California)
County of San Diego)

On 3/29/10 before me, N. Fuentes a notary public, personally appeared Tara Dezzelle, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)
              N. Fuentes

N. FUENTES
Commission # 1816482
Notary Public - California
San Diego County
My Comm. Expires Oct 15, 2012

Unofficial Document

For reference only, not for re-sale.

00083

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 2

# DEED OF TRUST

200609060376.001

SEP --2006
CHICAGO TITLE



200609060376      20   PGS
09/06/2006 1:03pm $52.00
PIERCE COUNTY, WASHINGTON

Return To:
FHHLC - POST CLOSING MAIL ROOM

1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

Assessor's Parcel or Account Number: County: 02-20-07-8-005 & 02-20-078-006 AOP City:
Abbreviated Legal Description: A PTN OF LOTS 1 AND 2,
PIERCE COUNTY SHORT PLAT NUMBER 200005195001

[Include lot, block and plat or section, township and range]          Full legal description located on page  3
Trustee: CHICAGO TITLE INSURANCE COMPANY
          4717 SOUTH 19TH                              Additional Grantees located on page  N/A
          TACOMA, WA 98405
                        ─────[Space Above This Line For Recording Data]─────  ▓▓▓▓▓3993

## DEED OF TRUST

                                    MIN   100085200584639936

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
(A) "Security Instrument" means this document, which is dated  **August 25th, 2006**
together with all Riders to this document.
(B) "Borrower" is
DEBORAH TOWNSEND &
SCOTT TOWNSEND, Wife & Husband

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
FIRST HORIZON HOME LOAN CORPORATION

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

‑6A(WA) (0012)      Form 3048 1/01
Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291

Exhibit 2

00085

200609060376.002

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF KANSAS
Lender's address is 4000 Horizon Way, Irving, Texas 75063

(D) "Trustee" is CHICAGO TITLE INSURANCE COMPANY
          4717 SOUTH 19TH, TACOMA, WA 98405
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  August 25th, 2006
The Note states that Borrower owes Lender
  SIX HUNDRED FIFTY THOUSAND & 00/100                                    Dollars
(U.S. $        650,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  SEPTEMBER 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider              [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                   [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

■53993                                                      Initials: _____
-6A(WA) (0012)              Page 2 of 15                           Form 3048  1/01

00086

200609060376.003

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the        County        of        Pierce                               :
                          [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

Parcel ID Number: County: 02-20-07-8-005 & 02-20-078-005 which currently has the address of
1221 14TH AVENUE                                                            [Street]
FOX ISLAND                                   [City] , Washington        98333        [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

▮▮▮▮3993
⬤ -6A(WA) (0012)                        Page 3 of 15                        Initialed                        Form 3048  1/01

00087

200609060376.004

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any

Initials: [signature]

-6A(WA) (0012)                     Page 4 of 15                     Form 3048  1/01

200609060376.006

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _DT_ _____

00089

200609060376.006

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

Initials:

-6A(WA) (0012)               Page 6 of 15               Form 3048  1/01

00090

200609060376.007

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials: _____

-6A(WA) (0012)          Page 7 of 15          Form 3048  1/01

00091

200609060376.008

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials

-6A(WA) (0012)                    Page 8 of 15                    Form 3048   1/01

00092

200609060376.009

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials

00093

200609060376.010

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

-6A(WA) (0012)　　　　　　　　Page 10 of 15　　　Initials:　　　　　Form 3048 1/01

00094

200609060376.011

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check

-6A(WA) (0012)                         Page 11 of 15                    Initials: [signature]              Form 3048  1/01

00095

200609060376.012

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

Initials:

200609060376.013

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

-6A(WA) (0012)          Page 13 of 15          Initials: _____     Form 3048  1/01

00097

200609060376.014

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Deborah Townsend*                      (Seal)
                                  DEBORAH TOWNSEND                         -Borrower

_____     *[signature]*                           (Seal)
                                  SCOTT TOWNSEND                           -Borrower

                                  (Seal)                                   (Seal)
                                  -Borrower                                -Borrower

                                  (Seal)                                   (Seal)
                                  -Borrower                                -Borrower

                                  (Seal)                                   (Seal)
                                  -Borrower                                -Borrower

████3993

-6A(WA) (0012)                    Page 14 of 15                            Form 3048  1/01

00098

200609060376.015

STATE OF WASHINGTON
County of    PIERCE                                    } ss:
        On this day personally appeared before me
    DEBORAH TOWNSEND & SCOTT TOWNSEND

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and
acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses
and purposes therein mentioned.
        GIVEN under my hand and official seal this     1st     day of  Sept . 2006

Barbara M. Simmons
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
JANUARY 5, 2008

_Barbara M Simmons_
Notary Public in and for the State of Washington, residing at
_Olympia_
My Appointment Expires on  1-5-08

3993                        Page 15 of 15          Initials [DT SM]        Form 3048  1/01
-6A(WA) (0012)

00099

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 3

# ASSIGNMENT OF DEED OF TRUST

# RECORDED 03/30/2009



2009033005543     1    PG
03/30/2009 2:09pm $14.00
PIERCE COUNTY, WASHINGTON

For reference only, not for re-sale.

Recording requested by:

...America Default Services Company

When recorded mail to:

MetLife Home Loans a division of MetLife Bank NA
4000 Horizon Way
Foreclosure Dept. #6205
Irving, TX 75063

APN.: 02-20-07-5-005        Ln No.: 0058463993
Order No.: 3133209

SPACE ABOVE THIS LINE FOR RECORDER'S USE
TS No.: WA-09-248713-SH

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL
ASSOCIATION.**

all beneficial interest under that certain Deed of Trust dated 8/25/2006 executed by **DEBORAH
TOWNSEND AND SCOTT TOWNSEND, WIFE AND HUSBAND,** as Trustor(s) to **CHICAGO TITLE
INSURANCE COMPANY,** as Trustee and recorded as Instrument No. 200609060376, on 9/6/2006, in
Book XXX, Page XXX  of Official Records, in the office of the County Recorder of PIERCE County, WA
together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue
under said Deed of Trust.

Dated: 2/13/2009 8:13 AM

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC AS NOMINEE FOR FIRST HORIZON
HOME LOAN CORPORATION

By: _____
Wanda Collier
Assistant Secretary

State of ___Texas___
                              ) ss
County of ___Dallas___

On __3-19-09__ before me, __Penny Lawson__ _____ the
undersigned Notary Public, personally appeared     Wanda Collier                personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____

(Seal)

PENNY LAWSON
NOTARY PUBLIC
STATE OF TEXAS
08-27-2011

Exhibit 3

14

00101

*Townsend v. Quality Loan Service Corp. et.al. 12-2-10932-5*

# EXHIBIT 4

# ASSIGNMENT OF DEED OF TRUST

# RECORDED 03/16/2012

201203160478 CCORITA        2 PGS
03/16/2012  02:12:29 PM    $15.00
AUDITOR, Pierce County, WASHINGTON

When recorded mail to:

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

TS No.: WA-09-248713-SH
Order No.: 30020519
APN No.: 02-20-07-8-005
MERS MIN No.: 100085200584639936          MERS Telephone No. 1-888-679-6377

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL ASSOCIATION, hereby grants, assigns, and transfers to

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2006-AA6, by First Horizon Home Loans, a division of First Tennessee Bank National Association, Master Servicer, in its capacity as agent for the Trustee under the Pooling and Servicing Agreement

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated 8/25/2006 executed by DEBORAH TOWNSEND AND SCOTT TOWNSEND, WIFE AND HUSBAND, as Trustor(s) to CHICAGO TITLE INSURANCE COMPANY, as Trustee and recorded as Instrument No. 200609060376, on 9/6/2006, of Official Records, , in the office of the County Recorder of PIERCE County, WA, that secures the underlying promissory note.

Said Deed of Trust encumbers the real property fully described as:

A PTN OF LOTS 1 PIERCE COUNTY SHORT PLAT NUMBER 200005195001

And more commonly known as: 1221 14TH AVENUE, FOX ISLAND, WA 98333

Exhibit 4

For reference only, not for re-sale.

15

00103

For reference only, not for re-sale.

TS No.: WA-09-248713-SH

Dated: 3·8·12

Nationstar Mortgage LLC attorney in fact for
FIRST HORIZON HOME LOANS, a division of
FIRST TENNESSEE BANK NATIONAL
ASSOCIATION

By: _____ 3·8·12
    Allison J Fries
    Limited VP for Nationstar
    Mortgage LLC

State of _Texas_
                        ) ss
County of _Denton_

On _March 8, 2012_ before me, _Brandon Jones_ the
undersigned Notary Public, personally appeared _____
                                                    Allison J Fries
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____ (Seal)

BRANDON DAVID JONES
Notary Public, State of Texas
My Commission Expires
September 01, 2015

00104